Good morning. Kara Hartzler, Federal Defenders, on behalf of Ms. Renteria. In Vidal-Mendoza, this Court created an exception for constitutional changes in law, applying them retroactively in the context of 1326d motions. That narrow exception also applies here. Because the residual clause is unconstitutionally vague, and subsequent precedent has applied it retroactively, Ms. Renteria should have been able to apply for voluntary departure, and the Court should vacate her reentry conviction. Ms. Hartzler, I have an initial question, which you probably won't find surprising, and that has to do with the Supreme Court's consideration of DiMaia. Yes. So I've tried to make, like, a little chart of what would happen if the Court went this way and the Court went that way. So I guess my first question to you is, if the Supreme Court, for whatever miraculous reason, were to reverse our decision in DiMaia, then would, inevitably, this collateral attack fail? It would. We acknowledge that. Okay. So, yes. So then let's say they affirm it, and then they leave retroactivity up in the air. So then what happens? Well, then I think that the Court needs to look at the principles of retroactivity that are generally applied. And I think an indicative sign of that is what the Supreme Court did in Welch, where it applied Johnson retroactively. And, obviously, we're not saying that habeas law and equivocally controls here, but I think it's a really good sign because what the Supreme Court did in Welch is they basically did a Teague v. Lane analysis. And I think Teague is the overarching standard that we often use for retroactivity. And in Welch, it said, yes, this is a substantive type of case that we will apply retroactively. And because this Court in Vidal-Mendoza already set up this narrow exception for similar cases where there was a constitutional issue of notice and the Supreme Court said, we're applying this retroactively, we think that it fits here in that narrow exception. Now, I want to make sure that the Court knows that we're not asking that, you know, this exception be broadened beyond our case, because there are a lot of changes in law, for instance, with DeCamp or with Mathis, where, you know, if we were to expand this narrow exception to them, it could potentially swallow the rule. But what this Court has said is that DeCamp and Mathis and cases like those are actually statutory construction cases. And the Court has said that in the habeas context. Here, unlike that, this is a constitutional issue that applies retroactively. And because of that, that's why we believe that this is more like the narrow exception that deals with a constitutional issue as in 212C than it is the standard Vidal-Mendoza case. So I guess the question I have is, even if DeMaia is upheld by the Supreme Court, the I.J. advised your client at the time of the correct law. At the time, she was not eligible for voluntary departure. Haven't we also held that the I.J. isn't required to anticipate future changes in the law and that if they give the correct advisement at the time, that's sufficient? Yes, and that's what the Court's decisions of the past have relied on. But what happened in Leon Paz, which is the narrow exception to Vidal-Mendoza, is that the Court said that there are just some cases that are so fundamentally erroneous that we don't necessarily look at whether the I.J. made a mistake or could have been clairvoyant. There are some cases that it's just too egregious of an error to say that we are going to convict you even though the statute under which you would have been deportable is unconstitutional, is void for vagueness. And this is the same kind of egregious error as there was in St. Cyr. So I acknowledge, Your Honor, that usually what happens is we look to the clairvoyance, but— Okay, so what was the egregious error in St. Cyr? The egregious error in St. Cyr is that there was a lack of notice, that basically people were pleading guilty and relying on— But in this case, the only thing she wasn't advised of was her eligibility for voluntary departure. And I'm wondering if that rises to the level of egregiousness as some of the other types of advisants, when there's actually a real substantive basis for relief from deportability, is out there. We believe it does, Your Honor. And the reason is, you know, the government has argued, for instance, that in this case, unlike in St. Cyr, Ms. Renteria didn't have a settled expectation. And I have two responses to that. The first response is that St. Cyr didn't rely on people's subjective reliance. It didn't say, oh, did you rely, did you not, and sort of parse it that way. It said, for this class of people, we're going to say that this—you are eligible for relief. And then the other reason that I think this is more like St. Cyr is that even though Ms. Renteria had notice in the sense that this was an aggravated felony, she did not have notice in the sense that she didn't know what the statute meant, because it was void for vagueness. So in the same way that a person doesn't have notice of the later consequences, similarly, Ms. Renteria didn't have notice of what the residual clause meant. And that's why we believe that it's the same here. And with Your Honor's permission, I'll save the remainder of my time. You may. Good morning. May it please the Court. Nicole Reese Fox, the United States. So this Court has drawn a bright line as to how you evaluate the question of what law governs when you're looking back at a removal hearing. And in Vidal-Mendoza, the Court said clearly that you apply the law at the time of the IJ hearing. And there is no question in this case that the IJ provided Ms. Renteria accurate advice as to her eligibility for relief. That is, the IJ correctly applied this Court's precedence in informing Ms. Renteria that she was not eligible for voluntary departure. And the limited exception in Leon Paz, based on St. Cyr, is not a constitutional exception. All that Leon Paz said was that the IJ in that case had actually misinterpreted the law as it applied at the time. So the statute had been amended after Leon Paz pled guilty. And the Court in St. Cyr said the normal statutory interpretation rule is that unless Congress speaks clearly, statutes apply prospectively only. And so when the IJ told Mr. Leon that he was ineligible for 212C relief, the IJ misinterpreted that longstanding presumption. And there was no case law on point at the time of Leon Paz's IJ hearing. So Leon Paz simply says that where the IJ misinterprets the law, then you go back and can undo what the IJ did. But in this case, there's no question that the IJ properly advised Ms. Renteria based on the law at the time of her hearing. Can you think of a situation where it's not a misadvisement of the law, but it's just that sometime down the road the law changes because that statute becomes unconstitutional or is wiped out? So can you think of a situation where in the government's view it would be proper then to give the applicant the benefit of the doubt? I don't think so. I think Vidal-Mendoza is fairly clear that it's a pretty bright-line rule. And, in fact, the sort of question of a new rule was the very reason that in Vidal-Mendoza and Lopez-Velasquez, which was the en banc decision that preceded it, that's the reason that they said we don't expect IJs to be clairvoyant. So even though in Lopez-Velasquez and Vidal-Mendoza they were interpreting statutory interpretation, sort of the evolution of definitions of aggravated felony, they said this is new precedent. It creates a new previously unavailable possibility of relief, a change in the law that didn't apply at the time of the hearing. So just as the sort of de comp math, this evolution of aggravated felony, is considered under Vidal-Mendoza a change in the law that the IJ is not supposed to predict, these new constitutional rules, like the rules in Johnson and DiMaia, are likewise rules that this court does not expect the IJ to predict. So aside from the clerical attack, there's also the sentencing issue. There was a 16-level enhancement based on California Health and Safety Code Section 11378, which we've been discussing. We now know it's divisible, and so the judge was supposed to turn to the documents of conviction to determine whether or not it created the predicate for the 16-level enhancement. But here, the judge just relied on the PSR, and counsel for the defendant objected to that. So was that not error to do that? It wasn't, Your Honor. So Judge Moskowitz didn't look just at the PSR. The PSR addendum provided direct quotes from the conviction documents, so that's the felony complaint and the abstract of judgment. Don't they have to provide the actual documents of conviction under our law? Under Gonzales-Aparicio, which we've cited in our brief, where the PSR quotes the documents, that is sufficient. I'd also point out that although the defense counsel did object to the plus-16 enhancement, they never made the argument that the conviction documents were insufficient under the modified categorical approach. So, for example, in the objections to the PSR at ER 36-40, there's never an argument about the documents being insufficient. Same thing at the sentencing hearing. They never raised that argument. Their argument was only that the statute is indivisible. They never went on to say if the statute is divisible, here we have a problem. And so Judge Moskowitz, I think, very reasonably relied on those quotations from the conviction documents in the PSR addendum in reaching that conclusion. Unless the Court has any other questions we would submit. Thank you. Thank you. I'd like to pick up on the 16-level sentencing enhancement issue that the government counsel was just discussing. First of all, Gonzales-Aparicio was very clear that his holding would not apply in situations where there was an objection below. And specifically, Gonzales-Aparicio said that it wouldn't apply where defense counsel did unsuccessfully argue before the district court, admittedly on different grounds than he raised on appeal, that the prior conviction should not trigger a 16-level enhancement. In other words, we acknowledge that the objection here was on a different basis. But Gonzales-Aparicio itself says even when the objection was on a different basis below, that holding saying you can just read the documents or the content of the documents into the PSR addendum, that that holding won't apply there. And I think the other thing that there's a real concern that undergirds this whole idea that we don't look to the PSR. And the reason is because there have been recent cases before this Court where there are ambiguities in the conviction documents. And, for instance, you know, the complaint says this, it has count one, and then it's count 1A or that sort of thing. And if you have a rule saying that the judge can just rely on what the PSR characterizes the conviction documents to say, a probation officer doesn't have any incentive to look for those ambiguities and to be aware of those ambiguities. And when we're talking about this level of a sentence enhancement, I think there needs to be more certainty than there would be from just relying on the probation officer's characterization of whether the documents are good enough or not. The probation officer is not a lawyer, bottom line. Who's burden is it? It's the government's burden. It's the government's burden. To produce those documents. That's right. And if the probation officer is quoting from them, he must have them. I mean, why wouldn't they be produced? I don't understand why they wouldn't be produced in this situation. I don't either. I'm not sure why. And it's mysterious, and I don't have an explanation, for your honor, quite honestly. Of course, you have this odd situation where maybe they have them, but then nobody makes an objection because the defense counsel essentially stipulated, right? Well, we objected to the 16-level sentencing enhancement. Correct. On different grounds. On different grounds. Right. But not on this ground, where if there was a problem with admitting the documents at that time, it could have been fixed. But now we're in the situation where the fact that the prior conviction qualified as a drug trafficking crime was essentially stipulated to. Correct. But I would just go back to our argument that Gonzales-Aparicio says on its face that its holding doesn't apply, even when the objection was on a different basis. So I don't think that this panel can go outside of that. Where does Gonzales say that? Are you talking about where it says the defense had raised some sort of objection? Exactly. I have this at 663 F. 3rd at 427 to 28. Okay. I thought it talks about objects to the characterization of the crime. I'm sorry, your honor. I'd have to go look at this. The objection here wasn't to the miss or the characterization of the crime. We can all go back and look at the language. Either way, I think that Gonzales-Aparicio says that if it's on different grounds, and it was on different grounds here, and I think that's all we need to look at. Okay. I read it a little differently, but we'll go back and read it. I understand. And I think just in the last 20 seconds I would go back to our argument that St. Cyr, contrary to government counsel's argument, it was constitutional. It was an issue of due process because the person didn't have notice at the time that they pleaded guilty. And that's a due process issue. St. Cyr characterized it as if we held to the contrary, this would violate due process. So I think that the issue that we have here, as in St. Cyr and 212C, was constitutional. It has been applied retroactively by the Supreme Court, and that's why we believe that Ms. Renteria is eligible for relief. Thank you, your honor. Thank you. Thank both counsel this morning for your argument. We appreciate the argument and the briefing in this case. The case is now submitted.
judges: McKeown, Wardlaw, Quist